IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

SHAREEFAH RASHEED                    CASE NO.:   4:21-cv-131
Aka SHAREEF BROWN,
          PLAINTIFF,
                                     CIVIL
vs.

DAVID JOSEPH FREDERICKS
aka DJ FREDERICKS and
ANDERSON, GIVENS
& FREDERICKS, P.A.,
          DEFENDANTS,
_____/

COMPLAINT FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES
ACT AND FLORIDA CONSUMER COLLECTIONS PRACTICES ACT
INTRODUCTION

1.) This is an action for actual and statutory damages brought by Plaintiff,

SHAREEFAH RASHEED aka SHAREEF BROWN, (hereinafter "Shareefa

Rasheed" or "Ms. Rasheed") an individual consumer, against Defendants,

DAVID JOSEPH FREDICKS aka DJ FREDERICKS and ANDERSON,

GIVENS & FREDERICKS, P.A., (hereinafter "Defendants") for violations of

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter

''FDCPA''), which prohibits debt collectors from engaging in abusive,

deceptive, and unfair practices, and for violations of the Florida Consumer

Collections Practice Act, section 559.551 *et seq.* (hereinafter "FCCPA").

2.) Ms. Rasheed brings two claims under the FDCPA and a claim under the
FCCPA arising from the Defendants' debt collection activities while collecting
allegedly overdue assessments owed to a homeowner's association.
Specifically, the claims arise from misleading threats of post-judgement
remedies contained in a debt collection letter which describe a judgment in
favor of the homeowner's association as a foregone conclusion.

3.) The Fair Debt Collections Practices Act provides:

> "A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any debt.
> Without limiting the general application of the foregoing, the
> following conduct is a violation of this section:

> **(10)** The use of any false representation or deceptive means to collect
> or attempt to collect any debt or to obtain information concerning a
> consumer." 15 USCS § 1692e

And

> "A debt collector may not use unfair or unconscionable means to collect or
> attempt to collect any debt. Without limiting the general application of the
> foregoing, the following conduct is a violation of this section:

> **(1)** The collection of any amount (including any interest, fee, charge, or
> expense incidental to the principal obligation) unless such amount is
> expressly authorized by the agreement creating the debt or permitted by
> law."
> 15 U.S.C. § 1692f

4.) Federal Courts have held that collections communications which threaten post-judgment remedies as a foregone conclusions violate 15 U.S.C. 1692e(10)[1].

5.) The Florida Consumer Collections Practices Act, Chapter 559 Fla. Stat §§ 559.55 – 559.785,  "…is a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." *Harris v. Beneficial Finance Company of Jacksonville,* 338 So. 2d 196, 200-201 (Fla. 1976). The FCCPA is to be construed in a manner that is protective of the consumer. *See* Fla. Stat. § 559.552 (providing that in the event of inconsistencies with the federal Fair Debt Collection Practices Act, the provision that is more protective of the debtor prevails). The Florida Legislature, in enacting the FCCPA, has "further defined and protected an individual's right of privacy in this state." *Collection Bureau of Orlando v. Continental Casualty Co.,* 342 So. 2d 1019, 1020 (Fla. 4th DCA 1977); *See also* Terri Jayne Salt, Note, *Fair Debt Collection Practices: Analysis of Florida and Federal Law,* 30 U. Fla. L. Rev. 892, 905 (1978)." <u>Laughlin v. Household Bank, Ltd.</u>, 969 So. 2d 509, 512-13 (Fla. Dist. Ct. App. 2007).

<u>JURISDICTION</u>

6.) Jurisdiction of this court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

---

[1] <u>Fuller v. Becker & Poliakoff, P.A.</u>, 192 F. Supp. 2d 1361 (M.D. Fla. 2002)

Venue in this District is proper in that the Defendants engage in debt collection in this District, and the conduct complained of occurred in this District.

## PARTIES

7.) Plaintiff, Shareef Rashad, is a natural person residing in Leon County, Florida.

8.) Defendant, David Joseph Fredericks aka DJ Fredericks, is an attorney engaged in the business of collecting debt in this state with its principal place of business located at 1689 Mahan Center Blvd, Ste B, Tallahassee, Leon County, Florida. The principal purpose of David Joseph Fredericks's law practice is the collection of debts in this state and he regularly attempts to collect debts alleged to be due to another.

9.) Defendant, Anderson, Givens & Fredericks, PA, is a law firm engaged in the business of collecting debt in this state with its principal place of business located at 1689 Mahan Center Blvd, Ste B, Tallahassee, Leon County, Florida. The principal purpose of Anderson, Givens & Fredericks, PA is the collection of debts in this state and it regularly attempts to collect debts alleged to be due to another.

10.)   Defendants are each individually and together a ''debt collector'' as defined by the FDCPA, 15 U.S.C. § 1692a(6) and by the FCCPA, Fla. Stat. § 559.55(7).

## FACTUAL ALLEGATIONS

11.) Upon information and belief, the Defendants have entered into an agreement with Chateau Lafayette Homeowners Association to provide it with legal services, including collection of past due fees and assessments.

12.) At all times pertinent to this action, the Defendants have acted to collect a debt owed to another, or of which they have taken assignment of after default for the purpose of collection.

13.) On or about March 24, 2021, the Defendants, sent written correspondence (Exhibit A) to Shereefah Rasheed in which the Defendants sought to collect allegedly overdue homeowner's association assessments on behalf of Chateau Lafayette Homeowner's Association.

14.) The written correspondence threatens post-judgment remedies against Shereefah Rasheed which it claims are available, regardless of the defenses the Plaintiff may have. In essence, the letter seeks to collect money from the Plaintiff by asserting that the Defendants' client's victory in a foreclosure and/or debt collection lawsuit is a foregone conclusion. These statements include, but are not limited to:

   a. "A lien foreclosure by the Association moves much faster than a mortgage foreclosure although the result is the same; you lose the property…"

b. "We also have the option of obtaining a monetary (money) judgment action against you.  Please consider the very adverse consequences to you of a monetary judgment. Under Florida law, upon obtaining a monetary judgment against you, the Association may garnish or seize the following property:" [listing 21 categories of various personal property, including]… "10 Household Appliances;", … "12 Antiques;"… "16. Fine China;"…."18. Jewelry and watches;"…."Pets; and 21. Other personal property.";

c. In the event that I have not received **full** payment by **April 4, 2020**, this firm **will** proceed with the legal actions against you, which I have described above, to take title to your property and to seize income and personal property from you as needed to satisfy a monetary judgment, to the extent needed to make the Association whole in payment of the sums which you owe the Association."

d. "…we find it best to let you know the consequences if you continue to withhold your required payment and to give you this final opportunity to avoid these consequences by remitting the payment due."

15.) The written correspondence materially mis-states applicable law or facts and uses false, deceptive, or misleading statements designed to encourage the payment of the claim. Specifically, the letter exaggerates the impact of a

judgment and the power attained thereby for the Defendants and their client homeowners' association, including:

    a.  The false, deceptive, or misleading assertion that the Association *will gain title* to the liened property upon a successful foreclosure action, rather than the property being sold at auction with any surplus going to the prior owner: "your failure to pay will result in a legal action . . . to foreclose the Association's Claim of Lien **and take title to the property for the Association** as well as to sue you personally and obtain a monetary judgment **to the extent the Association is not fully satisfied by renting your property**. (emphasis added)

    b.  The false, deceptive, or misleading assertion that a money judgment entered in favor of the association "remains as a lien against your present and future property, which will be a problem should you seek to sell it", without qualifying that statement with regard to homestead property, which is exempt from judgment liens, and for which Florida law provides a statutory procedure to avoid judgment liens so as to prevent them from being "a problem should [a homeowner] seek to sell it";

    c.  The false, deceptive, or misleading assertion that "also, of course, there is the effect on your credit from lien foreclosure or monetary

judgment", without qualifying that statement with an acknowledgment

that civil judgments are not reported on consumer credit reports by

any of the 3 major credit reporting entities. Civil judgments have not

factored into consumer credit reports by the 3 major credit reporting

entities since no later than 2017.

16.) The written correspondence (Exhibit A) demands payment of allegedly past

due homeowner's assessments and includes late fees calculated at a rate of $25

per month.

17.) The governing documents for Chateau Lafayette Homeowner's Association

limit the monthly late fee to $5 per month (Exhibit B).

18.) Pursuant to Fla. Stat. § 720.3085(3)(a) an administrative late fee of $25 can

only be imposed if the governing documents provide for the fee[2].

19.)Facing the threat of losing her home to foreclosure, Ms. Rasheed paid the sums

demanded by the Defendants, including the administrative late fees of $25 per

month.

20.) Ms. Rasheed has been harmed as a result of the acts and omissions described

herein, this harm includes, but is not limited to: emotional distress and anxiety.

---

[2] ""**(a)** If the declaration or bylaws so provide, the association may also charge an administrative late fee not to exceed the greater of $25 or 5 percent of the amount of each installment that is paid past the due date." Fla. Stat. § 720.3085

21.) Ms. Rasheed has hired the undersigned attorneys to represent her in this litigation and is obligated to pay them a reasonable attorney fee.

## First Claim

## Violation of FDCPA

22.) Plaintiff repeats and re-alleges and incorporates by reference paragraphs one through twenty-one above.

23.) The assessments imposed by Chateau Lafayette Homeowners Association is a "debt" as defined by 15 U.S.C. § 1692(a)(5).

24.) The Defendants are each a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

25.) Defendants have violated the FDCPA, these violations include, but are not limited to, the following:

    a. Violation of 15 U.S.C. § 1692(e) by making statements which presume that the outcome of any litigation would result in loss of Ms. Rasheed's home.

    b. Violation of 15 USC 1692(e) by making statements that are false, deceptive or misleading by exaggerating the impact of a judgment and the power of the letter-writer (and his client homeowners' association) in securing a judgment.

c. Violation of 15 U.S.C. § 1692(e)(10) by making a statement that a monetary judgment is a virtual certainty by stating that "We have the option of obtaining a monetary (money) judgment against you…upon obtaining a monetary judgment against you, the Association may garnish or seize the following property…"

d. Violation of 15 USC 1692(e) by making statements that are false, deceptive or misleading by exaggerating the impact of a judgment and the power of the letter-writer (and his client homeowners' association) in securing a judgment.

e. Violation of 15 U.S.C. § 1692(e)(10) by stating that: "In the event that legal action is needed because you do not pay in response to this letter, thousands of dollars will be due by you to the Association in attorney's fees and costs, which will be added to a lien foreclosure and/or monetary judgment" which presumes that Ms. Rasheed will lose in any litigation and that the Court will award "thousands of dollars" in costs and attorney fees to Chateau Lafayette Homeowners Association, Inc;

f. Violation of 15 U.S.C. § 1692(e) by making statements which describe post-judgment remedies as available legal actions which can be taken without first obtaining judgment on the merits of the case.

g. Violation of 15 U.S.C. § 1692(f)(1) by collection of late fees of $25 per month, in excess of the $5 per month amount allowed by the governing documents.

26.) Ms. Rasheed has been harmed as a result of the Defendants' violations of the FDCPA, these harms include, but are not limited to: imposition of excessive late fees in excess of the amount provided in the governing documents, emotional distress at the prospect of being dispossessed of her property and subject to extreme post-judgment remedies arising from the Defendants' threats and claims that it was certain to prevail in a court action.

<u>Second Claim</u>

<u>Violation of FCCPA</u>

27.) Plaintiff, Shareefah Rasheed, repeats and re-alleges and incorporates by reference paragraphs one through twenty-one above.

28.) Defendants have violated the FCCPA.  The Defendants' violations of the FCCPA include, but are not limited to, the following:

h. Violation of Fla. Stat. § 559.72(9) by asserting the existence of a legal right to obtain a monetary judgment as an "option" available, and then pursue garnishment and post-judgment execution, without having to first prevail in an action.

    i.   Violation of Fla. Stat. § 559.72(9) by asserting the existence of a legal right to "thousands of dollars" in costs and attorney fees, regardless of the outcome of litigation, without having to first prevail in an action and demonstrate that such costs and fees are reasonable.

    j.   Violation of Fla. Stat. § 559.72(9) by false, deceptive or misleading by exaggerating the impact of a judgment and the power of the letter-writer (and his client homeowners' association) in securing a judgment.

    k.   Violation of Fla. Stat. § 559.72(9) by demanding payment, and collecting, administrative late fees of $25 per month, when the governing documents limit administrative late fees to $5 per month.

    l.   Violation of Fla. Stat. § 559.72(7) willfully engaging in conduct which is reasonably expected to harassed Ms. Rasheed by representing that a judgment, coupled with thousands of dollars of costs and attorney fees, and seizure of her personal property was the foregone result of a lawsuit filed against her.

29.) Defendants acts as described above and herein were done intentionally with the purpose of coercing Ms. Rasheed to pay the alleged debt.

30.) As a result of the above violations of the State Act, Defendants are liable to Ms. Rasheed for injunctive and declaratory relief and for actual damages, statutory damages, and attorney's fees and costs.

WHEREFORE, Ms. Rasheed respectfully prays that judgment be entered against the Defendants in her favor for the following:

a.) Declaratory judgment that the Defendants violated the FDCPA, and FCCPA, and injunctive relief for the Defendants' violations of the FDCPA and FCCPA.

b.) Actual damages.

c.) Statutory damages pursuant to 15 U.S.C. § 1692(k).

d.) Statutory damages pursuant to section 559.77(2) Florida Statutes.

e.) Punitive damages as determined by the Court pursuant to section 559.77(2) Florida Statutes.

f.) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692(k) and section 559.77(2) Florida Statutes.

h.) For such other and further relief as may be just and proper.

i.) Trial by jury on all issues so triable.


Respectfully submitted,

/s/David H. Abrams
David H. Abrams

Attorney for Plaintiff
Fla. Bar No. 0692484
P.O. Box 568587
Orlando, Florida 32856
Phone: 407-601-3635
Phone: 850-224-7653
Facsimile 850-222-0206
Email: david@dhabramslaw.com

/s/Robert G. Churchill, Jr.
Robert G. Churchill, Jr.
Attorney for Plaintiff
CHURCHILL LAW GROUP, PLLC
Fla. Bar No. 0568295
902 North Duval Street
Tallahassee, FL 32303
(850) 668-6700
(850) 668-6702 (Fax)
Email: Robert@ChurchillLawGroup.com

**Jeremy Anderson, Esquire**
**Justin Givens, Esquire**
**D.J. Fredericks, Esquire**



# ANDERSON | GIVENS | FREDERICKS
------ Attorneys & Counselors At Law ------

1689 Mahan Center Blvd., Ste. B
Tallahassee, Florida 32308
Tel: 850-692-8900
Fax: 850-224-2440

Community Association
Land Use
Real Estate & Title
Civil Litigation
Probate and Trusts

5500 Bee Ridge Road, Suite 201
Sarasota, Florida 34233
Tel: 941-866-4348
Fax: 850-224-2440

March 24, 2020

## EXHIBIT A

Shareefah Rasheed

Tallahassee, FL 32308

    RE:  Chateau Lafayette Homeowners Association, Inc. - Assessment Delinquency
          **Last Chance to Avoid Severe Consequences**

Dear Ms. Rasheed:

On September 20, 2019, and December 11, 2019, I wrote to you on behalf of my client, Chateau Lafayette Homeowners Association, Inc. (herein referred to as "Association"), to require that you pay delinquent assessment(s) to the Association, together with interest, late charges (if applicable), costs, and attorney's fees due. You have failed to pay within the time we have provided.

Perhaps you did not take the Association seriously when I indicated that your failure to pay will result in a legal action against you to foreclose the Association's Claim of Lien and take title to the property for the Association as well as to sue you personally and obtain a monetary judgment to the extent the Association is not fully satisfied by renting your property.

A lien foreclosure by the Association moves much faster than a mortgage foreclosure although the result is the same: you lose the property. Typically, in our experience, a lien foreclosure only takes about four (4) to six (6) months from beginning to end.

We also have the option of obtaining a monetary (money) judgment action against you. Please consider the very adverse consequences to you of a monetary judgment. Under Florida law, upon obtaining a monetary judgment against you, the Association may garnish or seize the following property:

1.  Wages and other income of a person who is not a head of family;
2. Certain bank accounts;
3. Certain rents;
4. Certain accounts receivable;
5. Funds obtained as a beneficiary to a will or trust or by involvement in the administration of an estate or trust;
6. Certain real property, including non-homestead homes and condominiums;
7. Vehicles;
8. Boats;
9. Recreational vehicles;
10. Household appliances;



11. Stock certificates;
12. Antiques;
13. Televisions;
14. Radios and Stereo Equipment;
15. Office furniture;
16. Fine china;
17. Coin, stamp or sports memorabilia collections;
18. Jewelry and watches;
19. Art work;
20. Pets; and
21. Other personal property.

After obtaining a monetary judgment, the Association will conduct a deposition in aid of execution in which you must reveal all of the income, bank accounts, funds, and personal property subject to being garnished and seized by the Association and you will be subject to other discovery as needed for that purpose.

Again, perhaps you do not believe me when I tell you that the Association will pursue its lien foreclosure and/or monetary judgment remedies.  That would be a serious mistake.

The Association may seize the property promptly after receiving its monetary judgment and at any time within as long as twenty (20) years thereafter for real property and ten (10) years for personal property.  During that time, the monetary judgment remains as a lien against your present and future property, which will be a problem should you seek to sell it.  It also continues to accrue interest and late charges all that time.

Also, of course, there is the effect on your credit from a lien foreclosure or monetary judgment.

This is to give you **one last chance** to come current in your obligations to the Association in order to avoid the legal action I have described.

As a result of the necessity of this letter, another **$100.00** in attorney's fees has been added in your debt to the Association.  In the event legal action is needed because you do not pay in response to this letter, thousands of additional dollars will be due by you to the Association in attorney's fees and costs, which will be added to a lien foreclosure and/or monetary judgment action.

The amount due as of the date of this letter is **$3,607.05**.

Please note an additional monthly assessment is due on April 1, 2020, in the amount of $54.00.  Interest accrues at a rate of 18% per annum.  It is necessary that you provide your valid payment, in the **full amount** of **$3,607.05**, plus accrued interest, payable to Anderson, Givens & Fredericks P.A. Trust Account, and mail it to Anderson, Givens & Fredericks, P.A., 1689 Mahan Center Blvd., Suite B, Tallahassee, Florida 32308-5487.  **If paid April 1, 2020, please remit $3,670.06.  Additional interest accrues on any payments paid after April 1, 2020.**

In the event I have not received **full** payment by **April 4, 2020**, this firm **will** proceed with the legal actions against you, which I have described above, to take title to your property and to seize income and personal property from you as needed to satisfy a monetary judgment, to the extent needed to make the Association whole in payment of the sums which you owe the Association.

While we regret the necessity of the strong warning this letter provides, we found it best to let you know the consequences if you continue to withhold your required payment and to give you this one final opportunity to avoid those consequences by remitting the payment due.

Please understand that the **full amount due** is not subject to negotiation and any communications with this office expressing your discontent with the fact of this collection activity will not dissuade us from pursuing it and may increase the amount of attorney's fees you will owe.

Thank you for your anticipated understanding and timely cooperation and payment.

PURSUANT TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT YOU ARE ADVISED THAT THIS LAW FIRM MAY BE DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Very truly yours,

D.J. Fredericks, Esq.
dfredericks@andersongivens.com

DJF/pcf
cc: Chateau Lafayette Homeowners Association, Inc.

THIS INSTRUMENT PREPARED BY:
JAMES O. SHELFER, Attorney
1300 Thomaswood Drive
Tallahassee, FL 32312
(904) 385-0070

OR I 725PG2000

# DECLARATION OF RESTRICTIVE COVENANTS
## (CHATEAU LAFAYETTE)

THIS DECLARATION OF RESTRICTIVE COVENANTS is made and entered into this _p'_ day of _April_, 1994, by CHATEAU LAFAYETTE PARTNERSHIP, a Florida General Partnership, whose mailing address is 5028 Tennessee Capital Boulevard, Tallahassee, Florida 32303 (hereinafter referred to as the "Declarant"), for itself, its heirs, grantees and assigns.

### W I T N E S S E T H :

1. **LANDS.** The Declarant is the owner of certain lands located in Leon County, Florida, more particularly described in Exhibit "A" attached hereto. Declarant has, or will construct townhouse residential units upon the property. These covenants and restrictions are hereby imposed on all lands described in Exhibit "A" (hereinafter called the "property" or the "lands"), effective as set forth in paragraph 3. below.

2. **NAME.** The name by which the property shall be known and identified is "CHATEAU LAFAYETTE".

3. **SUBMISSION OF PROPERTY TO RESTRICTIVE COVENANTS.** Declarant impresses and imposes upon the property these restrictive covenants, which shall run with the land. This Declaration shall be binding upon Declarant, its heirs and assigns. All restrictions, reservations, easements and cross-easements set forth herein shall be binding upon any grantor and grantee, or their assigns and successors in interest as if set forth in full in the instrument of conveyance.

4. **DEFINITIONS.** The terms used in the restrictions shall have the following meanings:

   A. "Townhouse or Unit" shall mean the parcel of real property, and the single-family living unit constructed on it. Each townhouse as currently designed may be a part of a duplex of two (2) townhouses with each townhouse sharing a "common" or "party" wall with the adjoining townhouse owner.

   B. "Homeowner" or "Unit Owner" means the owner of a townhouse.

EXHIBIT B

OR ! 725 PG 2001

C. "Association" means CHATEAU LAFAYETTE HOMEOWNERS ASSOCIATION, INC., a non-profit association, and its successors, which association shall be responsible for the operation and management of the entrance area off of Mahan Drive and the common area off of Silk Bay Court. The Association shall have such other rights, duties and obligations as are set forth in this Declaration; the Bylaws and the Articles of Incorporation.

D. "Bylaws" shall mean such bylaws as are established by the Association from time to time.

E. "Assessment" means a share of the funds required for the payment of common expenses which from time to time is assessed against a homeowner.

F. "Property" means and includes the land described in Exhibit "A", and all improvements thereon, together with all easements and rights appurtenant to the property intended for use in connection with the property, and necessary to effectuate the purpose and intent of Declarant as set forth herein.

G. "Duplex" shall mean a free standing building consisting of two (2) adjoining townhouses built with common or party walls and not connected on either side to other townhouse units.

H. "Parking Pads" means the parking area constructed in front of each building for the use of the homeowners within the building.

5. **MEMBERSHIP AND VOTING RIGHTS IN THE ASSOCIATION.**

A. **Membership:** Any person who owns property that is subject to these restrictions shall automatically be a member of the Association provided, however, that where any unit is owned by more than one (1) person, one (1) of the owners shall be designated to cast the vote on matters to come before the Association on behalf of all of the owners of the unit.

In the event the owner of a unit is a corporation or partnership, a partner or corporate officer shall be designated to cast the vote on behalf of the partnership or corporation.

- 2 -

OR I 725 PG 2002

B. **Voting Rights**:  The Association shall have two (2) classes of voting members as follows:

"Class A" - Class A members shall be all owners with the exception of Declarant, and shall be entitled to one (1) vote for each unit owned.

"Class B" - The Class B member shall be the Declarant, who shall be entitled to exercise two (2) votes for each unit owned by Declarant to be constructed as shown on the approved preliminary plat of the property.  The Class B membership shall cease and be converted to Class A membership when the total votes outstanding in the Class A membership equal the total votes outstanding in the Class B membership.

6. **ASSESSMENTS AND LIENS**.  Each townhouse owner, by the acceptance of a deed for a townhouse located within the property, whether or not it shall be so expressed in such deed, covenants and agrees to pay the Association:

A.  Annual assessments or charges as herein set forth and as established by the Association; and

B.  Special assessments for capital or other improvement or acquisitions, which assessments are to be established and collected as hereinafter provided.

The annual and special assessments, together with interest, costs and reasonable attorneys' fees required to collect the same, if any, shall be a lien against the townhouse owned by the party failing to make the payment as due; provided, however, that any such lien shall be subordinate and inferior to any first mortgage on such townhouse.  Assessments shall be made pursuant to the bylaws of the Association.  No townhouse owner may exempt himself from liability for his contribution towards the common expenses by waiver of the use or enjoyment of any of the easements areas or by the abandonment of his townhouse.  The Declarant shall not be obligated for payment of assessments for townhouse units he owns within the subdivision unless Declarant's units are rented.

- 3 -

OR 1 725 PG 2003

If Declarant's units are rented, he shall pay a prorated amount only while the unit is occupied by a tenant. In return for not paying homeowners dues, Declarant shall maintain the entranceway and common area until such time as Declarant elects to turn maintenance over to the Homeowners Association and begins to pay dues on units owned by the Declarant.

      7.  **PURPOSE OF ASSESSMENTS.**  The assessments levied by the Association shall be used to promote and maintain the health, safety and welfare of the members of the Association, and in particular, for the improvement and maintenance in a first-class condition and in a good state of repair of the entrances to the subdivision and such other areas which are maintained by the Association, whether owned by the Association or by a townhouse owner and maintained by the Association.

      8.  **DEPOSIT OF ASSESSMENTS.**  All sums from assessments or related payments shall be collected and held by the Association and shall be used for the purposes set forth in these Restrictive Covenants, the Articles of Incorporation, Bylaws or other agreements among the townhouse owners.

      9.  **AMOUNT OF ANNUAL ASSESSMENTS.**  The annual assessment per townhouse unit shall be One Hundred Eighty Dollars and No Cents ($180.00) for the year 1994.  Should the Declarant elect to build a swimming pool, the annual assessment may increase at that time. Thereafter, the assessment shall be set by a vote of the Board of Directors of the Association.  The assessments may be paid in whole or in monthly installments.   The Board of Directors may not increase the annual assessments by more than ten percent (10%) over the previous year's assessments without the approval of a majority of the unit owners.

      10.  **SPECIAL ASSESSMENTS.**  In addition to the annual assessments authorized above, the Association may levy in any assessment year, a special assessment applicable to that year only for the purpose of defraying in whole or in part the cost of any construction, re-construction, repair or replacement of the

- 4 -

OR ! 7 2 5 PG 2 0 0 4

improvements or easements within the property. The decision to make the special assessment and the amount of the assessment shall be made in accordance with the Articles of Incorporation and Bylaws of the Association.

11. **COLLECTION OF ASSESSMENTS.** All assessments shall be due on the first (1st) day of each calendar month and are delinquent if not paid by the tenth (10th) day of each month. No set-offs shall be allowed to any townhouse owner for repairs or improvements, or services contracted for by any townhouse owner without the express written authorization of the Board of Directors of the Association. The Association shall be entitled to collect from the townhouse owner all legal costs including a reasonable attorney's fee incurred by the Association in connection with or incident to the collection of such assessment and/or late charges or fees or in connection with the enforcement of the lien resulting therefrom.

12. **SERVICE CHARGE OF DELINQUENT ASSESSMENTS.** In order to defray the cost of additional bookkeeping, billing and related expenses, all assessments not paid by the tenth (10th) day of each month may, upon decision of the Board of Directors of the Association, bear a service charge of Five Dollars and No Cents ($5.00) per month from the due date.

13. **EFFECT OF TRANSFER OF TITLE ON ASSESSMENT.** The sale or transfer of any townhouse shall not affect the assessment lien; provided, however, the sale or transfer of any townhouse pursuant to mortgage foreclosure or any proceedings in lieu thereof shall extinguish the lien of such assessments as to payments which became due prior to such sale or transfer. No sale or transfer shall relieve such townhouse from liability from any assessment thereafter becoming due or from the lien thereof.

14. **ADDITIONAL DUTIES AND POWERS OF ASSOCIATION.** In addition to the duties and powers of the Association, as hereinabove set forth, and in addition to any powers and duties set

- 5 -

OR I 7 2 5 PG 2 0 0 5

forth in the Articles of Incorporation and Bylaws of the
Association, the Association shall:

A.  Maintain and otherwise manage all the common
areas and all improvements and landscaping on the common
areas and at the entrances to the subdivision.

B.  Grant easements where necessary for utilities,
cable television and sewer and drainage facilities over
the easements or cross-easement areas.

C.  Obtain and maintain such policy or policies of
insurance as the Association may deem necessary or
desirable in protecting the interest of the Association
and its members.

D.  Have the authority to employ a manager or other
person and to contract with independent contractors or
managing agents to perform all or any part of the duties
and responsibilities of the Association, including a yard
maintenance service.

E.   The Declarant may, at its option, or the
Association may build a swimming pool for the use and
benefit of all homeowners and their guests and invitees.
The pool shall be owned by the Association, and the
Association shall be responsible for the maintenance of
the pool.  The Association shall have the authority to
make and enforce rules governing the use of the pool.

15.  **EXTERIOR MAINTENANCE OF TOWNHOUSES AND OTHER AREAS.**
The Association may maintain, at its election, all of the yards
within the subdivision and all of the common areas and shall pay
for such maintenance from the annual assessments.  The Associa-
tion's agents or employees shall have the right to go onto the
property of any townhouse owners for the sole purpose of
maintenance as provided for in this paragraph.  Any contract for
continual maintenance of the yards and common area shall be
approved by the Board of Directors of the Association after
solicitation of at least three (3) bids from persons or firms
capable of providing similar landscaping services.

- 6 -

OR 1725 PG 2006

16. **EASEMENTS.** The following easements shall be deemed to be covenants running with the land with relation to townhouses and the property described in Exhibit "A".

A.   Fencing easement along and upon the boundaries of the property.  The Declarant may erect a fence upon all or parts of the boundaries of the property.  The Association may subsequently decide to erect on such boundaries additional or alternative fencing.  The Association shall maintain such fences as are erected initially by the Declarant or thereafter by the Association.  All townhouses owners in **CHATEAU LAFAYETTE** will allow the Association or its agents or designees the right to go over or upon lots within **CHATEAU LAFAYETTE** for the purpose of construction, maintenances and repair of such fencing.

B.   Utility easements are reserved through the property for utility services in order to properly and adequately serve all units constructed within the property; provided, however, that such easements through any townhouse shall be only according to the plans and specifications or as the townhouse building is actually constructed unless approved in writing by the townhouse owner.  Utilities as used in this paragraph shall be given a broad meaning and shall include, but not be limited to an easement for the installation, repair and maintenance of electric, telephone, water, cable television and sanitary sewer lines and facilities, and drainage facilities.

C.   If any townhouse shall encroach upon any easement area or other lot by reason of original construction, then an easement appurtenant to such encroaching townhouse, to the extent of such encroachment, shall exist so long as such encroachment shall exist.

- 7 -

OR 1725 PG 2007

D.   Whenever sanitary sewer, water, electricity, cable television, telephone lines or connections are installed within the property, which connections or lines or any portions thereof lie within the units or the townhouse lots owned by homeowners other than the owner of a townhouse served by said lines or connections, the owner of any townhouse served by said connections shall have the right and is hereby granted an easement to the full extent necessary to enter upon such units or townhouse lots or to have the utility companies enter upon the units or lots in or upon which said connection or lines or any portions thereof lie or are located, to repair, replace and generally maintain the connections as may be necessary.   Whenever sanitary sewer, water, electricity, cable television or telephone lines or connections are installed within the property, which connection or lines serve more than one townhouse, the owner of each such townhouse served by said connection and lines shall be entitled to the full use and enjoyment of such portions of the connections and lines as serve his townhouse, and such owners shall be jointly and equally responsible for the maintenance or repair of any jointly used connections.

E.   Each townhouse or other such free standing building as may be constructed will be constructed with a "parking pad" for the use of all of the owners of the units within the building.   Each homeowner within each building shall have a non-exclusive easement for himself, his agents, invitees, heirs and assigns for access and parking over and across the parking pad constructed as a part of the building of which his unit is a part.

17.   **PARKING.**  Any boats kept on the property shall be stored on the parking pads only.  No boats shall be stored on the property that exceed fifteen feet (15') in length.  No non-operable

- 8 -

OR I 725 PG 2008

motor vehicles shall be parked on the property in excess of seven
(7) consecutive days.  No owner shall be entitled to use more than
one (1) parking space for a boat, motorhome or travel trailer or
other vehicle not used for regular day-to-day transportation.  No
unit owner may use a parking space for a boat, motor vehicle,
trailer or other motor vehicle if the household of the unit owner
utilizes more than one motor vehicle on a regular basis.

18.  **LAND USE AND BUILDING TYPE.**  No townhouse shall be
occupied or used except for residential purposes by the owners,
their tenants or social guests, except that Declarant may use
townhouses owned by him for display and sales offices.

19.  **ARCHITECTURAL CONTROL:**  No building, shed or other
structure of any type, including but not limited to fences and
swimming pools, whether of a temporary or permanent nature, shall
be built, placed or allowed to exist on any townhouse lot, nor
shall any exterior modification of any townhouse unit be made
without the prior written approval of the Board of Directors of the
Association or their designee, except that approval shall be solely
with Declarant so long as Class B membership exists.  Any owner
seeking approval shall submit detailed plans and specifications
showing proposed locations on the property.

20.  **NUISANCES.**  No noxious or offensive activities shall
be carried on, in, upon or around any townhouse or in or upon any
easement areas, nor shall anything be done thereon which may be or
may become an annoyance or a nuisance to the remaining townhouse
owners or their tenants or licensees or any of them which shall in
any way interfere with the quiet enjoyment of such of the owners,
tenants or licensees of his respective living unit or which shall
in any way increase the rate of insurance for the property.

21.  **SIGNS.**  No sign of any kind shall be displayed to
the public view on any townhouse or any portion of the easement
areas, except one sign of customary and reasonable dimension
advertising the townhouse for sale or rent, and except for signs

- 9 -

OR 1 725 PG 2009

used by Declarant, his business successors or assigns to advertise the property or townhouses during the construction and sale.

22. **GARBAGE DISPOSAL.** All rubbish, trash and garbage shall be regularly removed from the property and shall not be allowed to accumulate thereon. All trash, garbage and other waste shall be kept in sanitary containers. All equipment for the storage or disposal of such materials shall be kept in a clean and sanitary condition.

23. **EXTERIOR APPEARANCE OF EACH UNIT.** No unit owner may make any alterations or additions to any unit or change the exterior color of any unit without first obtaining the written consent of the Board of Directors of the Association approving the plans and specifications for the changes or alterations to be made to the unit or the color of any proposed repainting.

All drapes or curtains visible to the outside of any townhouse unit shall have a white backing.

24. **ROOFING:** The roof of each duplex serves as the roof for both units in the duplex building. The unit owners in each duplex shall be equally responsible for the cost of maintenance repair or replacement of the roof of the duplex in which the unit is located. If a roof of a duplex is damaged or destroyed or is otherwise in need of repair or replacement, any owner who has a unit in the duplex needing the repair or replacement may, after notice to the other duplex unit owner, make such repairs or replacement, and the other duplex unit owner shall contribute to the cost of such repair or replacement in equal shares. This right of contribution shall be without prejudice to any right to call for a larger contribution under any rules of law regarding liability for negligent or willful acts or omissions. Notwithstanding any other provision in this paragraph, an owner who by his negligent or willful acts causes damages to the roof of a duplex exposing the other unit in the duplex to the elements shall be liable for any such damage and shall bear the entire cost of furnishing the necessary protection against the elements for the other unit.

- 10 -

OR 1 7 2 5 PG 2 0 1 0

25. **FENCES**: No fences shall be allowed in the front of any duplex building. Backyard fences may extend no more than thirty feet (30') to the rear of any building or extend beyond the corner of any building. Therefore, a backyard fence for a corner unit in a duplex building may extend from the corner of the building parallel to the property line for no more than thirty feet (30'). In addition, all fences must provide access from the rear to allow entry of yard maintenance crews employed by the Association. Notwithstanding anything in this paragraph to the contrary, consent of the Board of Directors of the Association must be obtained as provided for in the Declaration of Restrictive Covenants before any fence is constructed by any unit owner.

26. **RIGHT TO LEASE**. The townhouse owners shall have the right to lease or rent their townhouse, provided that the lease is made subject to the covenants, conditions, restrictions, limitations and uses contained in this Declaration and those contained in the Articles of Incorporation, the Bylaws and any rules and regulations of the Association.

27. **REGULATIONS**. Reasonable regulations concerning the use of the property including common easement areas and all other areas which the Association maintains, regardless of fee ownership, may be made and amended from time to time by the Association. Copies of such regulations and amendments shall be furnished by the Association to all townhouse owners and residents of the townhouses upon request.

28. **PETS**. Household pets such as dogs or cats are permitted, but no dog or cat shall be permitted to run free, and it must be on a leash or under the direct control of its owner when it is anywhere on the property other than upon the owner's lot.

29. **LIMITATION OF LIABILITY OF ASSOCIATION**. Notwith-standing the duties of the Association, specifically including, but not limited to its duty to maintain and repair the entrances and the common areas, the Association shall not be liable to townhouse owners, their invitees or guests for injury or damage caused by any

- 11 -

OR 1 7 2 5 PG 2 0 1 1

latent defect or condition of the property owned, or to be maintained and repaired by the Association or caused by acts of God or by third parties.

30. **ESTIMATES OF COST OF REPAIRS AND RECONSTRUCTION.** Within a reasonable time after a casualty or loss to property for which the Association has the responsibility of maintenance and repair, the Association shall obtain reasonably accurate estimates of the cost of repairing or replacing the damaged property. The Association shall diligently repair or replace the same unless a majority of the townhouse owners vote to the contrary.

31. **ENFORCEMENT OF OBLIGATIONS.** Each townhouse owner shall be governed by and shall comply with the terms of this Declaration, the Articles of Incorporation of the Association, the Bylaws of the Association and any regulations adopted by the Association. Upon failure of a homeowner to so comply, the Declarant, the Association, any mortgagees having a first lien on a townhouse, or other townhouse owners shall have the right to institute legal proceedings, and the prevailing party shall be entitled to recover its or his legal costs including a reasonable attorney's fee. The failure of any of the foregoing named entities or persons to enforce any right, requirement, restriction, covenant or other provisions of the hereinabove documents shall not be deemed to be a waiver of the right to seek judicial redress against subsequent non-compliance therewith.

32. **INSURANCE.** Each townhouse owner shall maintain fire and extended coverage insurance on his townhouse and improvements in an amount equal to the maximum insurable replacement value. The Association may require the townhouse owner to provide written evidence of such coverage annually. In the event of loss, subject to the consent and approval of any mortgagees named as loss payees, all insurance proceeds shall be used to promptly repair or replace the damaged property unless the Board of Directors of the Association shall otherwise agree.

- 12 -

OR I 725 PG 2012

33. **PARTY WALLS.** Each wall built as a part of the original construction of a townhouse within the subdivision and placed on the dividing line between the lots shall constitute a party wall, and to the extent not inconsistent with the provisions of this paragraph, the general rules of law regarding party walls and liability for property damage due to negligence or willful acts or omissions shall apply thereto.

The cost of reasonable repair and maintenance of a party wall shall be shared by the owners who make use of the wall in proportion to such use.

If a party wall is destroyed or damaged by fire or other casualty, any owner who has use of the wall may restore it, and if the other owners thereafter shall make use of the wall, they shall contribute to the cost of restoration in proportion to such use. This right of contribution shall be without prejudice to any right to call for a larger contribution under any rule of law regarding liability for negligent or willful acts or omissions.

Notwithstanding any other provisions in this paragraph, an owner who, by his negligent or willful acts causes a party wall to be exposed to the elements shall bear the whole cost of furnishing the necessary protection against such elements.

The right of any owner to contribution from any other owner under this paragraph shall run with the land, and shall pass to such owner's successors in title.

34. **AMENDMENTS TO DECLARATION.**

A. **Amendments by Declarant:** Until Declarant's Class B membership in the Association is terminated as herein provided, Declarant acting alone may amend these Restrictive Covenants, except that prior approval of the Federal Housing Authority (FHA) and Veterans Administration (VA) must be obtained before any additional property is annexed to the subdivision, any common areas are dedicated to a public entity, or the Articles of Incorporation of the Association are amended. All other amendments or modifications may be made by Declarant without obtaining the prior

- 13 -

OR 1725 PG 2013

consent of FHA/VA, the Association, or the owners; provided, however, that the Association shall, forthwith upon request of Declarant, join in any such amendments or modifications and execute such instruments to evidence such joinder and consent as Declarant shall, from time to time, request. Additionally, until Declarant's Class B membership is terminated, Declarant may waive or grant variance from any of the covenants and restrictions, other than those regarding payment of assessments, as to any lot, including set back restrictions, if the Declarant, in its sole judgment, determines such variance to be a minor or insubstantial violation. After termination of Declarant's Class B membership in the Association, the right to grant such variances shall be exercised by the Architectural Control Committee.

B. **Amendments By Owners:** Except as provided in this Declaration, after termination of Class B membership in the Association, this Declaration may be amended (i) by the consent of the owners of two-thirds (2/3) of all units, together with (ii) the approval or ratification of a majority of the Board of Directors of the Association. The aforementioned consent of the homeowners may be evidenced by a writing signed by the required number of homeowners or by the affirmative vote of the required number of homeowners at any regular or special meeting of the Association called and held in accordance with the Bylaws and evidenced by a Certificate of the Secretary or an Assistant Secretary of the corporation.

35. **ANNEXATION:** As long as Declarant holds Class B voting rights, it may, with prior approval of FHA/VA, elect to annex additional property into the subdivision known as **CHATEAU LAFAYETTE**; provided, however, such additional property is subject to these or similar Restrictive Covenants.

36. **FHA/VA APPROVAL:** So long as Class B membership exists, the following actions shall require the prior approval of the Federal Housing Authority and/or Veterans Administration: annexation of additional properties to the subdivision; dedication

- 14 -

OR 1 7 2 5 PG 2 0 1 4

of common areas to public use; and any amendment to the Articles of Incorporation of the Association. These restrictions, unless prohibited by rule of law, may be amended from time to time by the Association after first obtaining the written consent of two-thirds (2/3) of the then current unit owners.

37. **DEVELOPMENT BY DECLARANT.** No provisions contained herein shall prevent Declarant, its contractors or subcontractors from performing such work and activities as are reasonably necessary or advisable in connection with the construction of any townhouses or other improvements upon the property, nor shall said provisions in any way prevent the Declarant from maintaining such sign or signs on the property as may be necessary for the sale, lease or other disposition thereof.

38. **ELECTION OF BOARD OF DIRECTORS.** In addition to all other rights and privileges granted to the Declarant under this Declaration, and notwithstanding any provisions of the Articles of Incorporation and Bylaws to the contrary, the Declarant shall be entitled to appoint all of the members of the Board of Directors of the Association. This right shall continue until the sooner occurrence of: (1) December 31, 1993; or (2) the Declarant no longer has an ownership interest in the property.

39. **TERMINATION OF RESPONSIBILITY OF DECLARANT.** At such times as the Declarant sells, conveys or otherwise disposes of his interest in and to all of the townhouses, the Declarant shall be relieved of the performance of any duty or obligation hereunder.

40. **VARIANCES.** Variances for minor deviations from this Declaration may be granted by Declarant or the Association at any time to Declarant or any property owner within the property. Variances for such minor deviations, if any, are discretionary.

41. **TITLES.** The titles of each of the paragraphs or subdivisions thereof contained herein are for convenience only and shall be deemed to have no legal effect.

42. **SEVERABILITY.** The invalidity in whole or in part of any covenant, condition, restriction, agreement, provision,

- 15 -

OR F 7 2 5 PG 2 0 1 5

section, subsection, sentence, clause, phrase or word contained in this Declaration or in the Articles of Incorporation, Bylaws and regulations of the Association shall not affect the validity of the remaining portions.

43. **TERMINATION.** Unless sooner terminated according to the manner herein provided, these Restrictive Covenants, but not the easement granted hereby, shall terminate on December 31, 2006.

IN WITNESS WHEREOF, the Declarant has caused this Declaration of Restrictive Covenants to be executed the day and year first above written.

**WITNESSES**
(Please Type or Print Names Beneath Signatures):

CHATEAU LAFAYETTE PARTNERSHIP

Witness - F Michael Dimitroff

By: _____
MEHRDAD GHAZVINI-NEJAD,
General Partner

Witness   Terri L. McCormick

STATE OF FLORIDA,
COUNTY OF LEON.

The foregoing Declaration of Restrictive Covenants pertaining to **CHATEAU LAFAYETTE** was acknowledged before me by **MEHRDAD GHAZVINI-NEJAD**, as General Partner of **CHATEAU LAFAYETTE PARTNERSHIP**, a Florida General Partnership, under oath and personally known to me, on this _____ day of _____, 1994.

NOTARY PUBLIC   F Michael Dimitroff
(Please Type or Print Name of Notary)

My Commission Expires:

F. MICHAEL DIMITROFF
MY COMMISSION # CC323791 EXPIRES
October 22, 1997
BONDED THRU TROY FAIN INSURANCE, INC.

- 16 -

OR I 725 PG 2016

Commence at an old concrete monument marking the Northwest corner
of Section 27, Township 1 North, Range 1 East, Leon County,
Florida, thence run North 89 degrees 52 minutes 51 seconds East
2,033.00 feet to the POINT OF BEGINNING.  From said POINT OF
BEGINNING, continue North 89 degrees 52 minutes 51 seconds East
202.90 feet; thence South 00 degrees 02 minutes 00 seconds East
144.93 feet to a point on the Northern right of way line of Mahan
Drive (also known as U.S.90 East); thence along said right of way
line of Mahan Drive, North 67 degrees 23 minutes 00 seconds East
324.92 feet; thence leaving said right of way line run North 00
degrees 00 minutes 13 seconds East to a point on the said Northern
right of way line of Mahan Drive; thence along said right of way
South 89 degrees 50 minutes 36 seconds West 125.11 feet; thence
North 67 degrees 23 minutes 00 seconds East 402.19 feet; thence
leaving said right of way run North 00 degrees 22 minutes 37
seconds East 446.85 feet; thence South 89 degrees 55 minutes 59
seconds East 557.28 feet; thence South 00 degrees 20 minutes 03
seconds West 286.08 feet to a point on the said Northern right of
way line of Mahan Drive; thence along said right of way line North
67 degrees 23 minutes 00 seconds East 32.58 feet; thence leaving
said right of way line North 00 degrees 20 minutes 03 seconds East
273.52 feet; thence South 89 degrees 55 minutes 59 seconds East
139.19 feet; thence North 00 degrees 04 minutes 17 seconds East
299.62 feet; thence West 867.49 feet; thence North 300.66 feet;
thence North 89 degrees 58 minutes 35 seconds West 610.21 feet;
thence South 00 degrees 03 minutes 16 seconds West 1,202.10 feet to
the POINT OF BEGINNING; containing 24.82 acres, more or less.

**EXHIBIT "A"**

OR 1855 PG 1030                    1402971

THIS INSTRUMENT PREPARED BY:

JAMES O. SHELFER, Attorney
1300 Thomaswood Drive
Tallahassee, FL 32312
(904) 385-0070

RECORDED IN THE PUBLIC
RECORDS OF LEON CO. FLA.

Nov 7  2 21 PM '95

DAVE LANG
CLERK CIRCUIT COURT
LEON COUNTY, FLORIDA

## AMENDMENT TO

## DECLARATION OF RESTRICTIVE COVENANTS

### (Chateau Lafayette)

THIS AMENDMENT TO DECLARATION OF RESTRICTIVE COVENANTS is executed this 26th day of October, 1995, by CHATEAU LAFAYETTE PARTNERSHIP, a Florida general partnership, whose mailing address is 4727 North Monroe St., Tallahassee, Florida 32303 (hereinafter referred to as the "Declarant"), for itself, its heirs, grantees and assigns.

#### BACKGROUND INFORMATION:

By Warranty Deed dated Septeember 2, 1993, the Declarant obtained title to 23.82 acres of land now known as the Chateau Lafayette subdivision. The Deed is recorded in Official Records Book 1686, at page 1939 of the Public Records of Leon County. On April 12, 1994, the Declarant caused a set of Declaration of Restrictive Covenants to be filed in the Public Records of Leon County, Florida in Official Records Book 1725 at Page 2000. An incorrect Exhibit "A" was attached to the Declaration of Restrictive Covenants reflecting an erroneous encumbrance of 24.82 acres. The Exhibit "A" attached to the Declaration of Restrictive Covenants is incorrect in that it describes a parcel of property which was not entirely owned by the Declarant at the time the restrictions were recorded and not intended to be included in the Declaration of Restrictive Covenants. The correct legal description is as reflected on the plat of Chateau Lafayette, recorded in Plat Book __11__, at Pages __12____ of the Public Records of Leon County, Florida. This Amendment is being recorded in the Public Records to release all property not described on the Exhibit "A" attached to this Amendment and to correct the description of the lands or property to which the Declaration of Restrictive Covenants should apply.

OR 1855 PG 1031

**TERMS:**

1.    IN CONSIDERATION of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Declarant hereby amends Paragraph 1 of the Declaration of Restrictive Covenants by deleting the Exhibit "A" attached to the Declaration of Restrictive Covenants and substituting the Exhibit "A" attached to this Amendment in lieu thereof.

2.    All property described on the Exhibit "A" attached to the Declaration of Restrictive Covenants that is not described on the Exhibit "A" attached to this Amendment is specifically released.

3.    For clarification purposes only, the survey plats of the correct 23.82 acre tract and the erroneous 24.82 acre tract are attached hereto as Exhibits "B" and "C" respectively.

4.    The undersigned Notary Public, F. Michael Dimitroff, joins in this Amendment to Declaration of Restrictive Covenants for the sole purpose of stating that the Declaration of Restrictive Covenants were notarized by him on April 12, 1994.

IN WITNESS WHEREOF, the Declarant has caused this Amendment to Declaration of Restrictive Covenants to be executed the day and year first above written.

WITNESSES:                              CHATEAU LAFAYETTE PARTNERSHIP,
                                        a Florida general partnership

Print Name: Terri L. McCormick

                                        By: _____
Print Name: EARNESTINE BLAIR               MEHRDAD GHAZVINI-NEJAD
                                           General Partner

STATE OF FLORIDA,
COUNTY OF LEON.

     The foregoing instrument was acknowledged this 3rd day of November, 1995, by MEHRDAD GHAZVINI-NEJAD, as General Partner of CHATEAU LAFAYETTE PARTNERSHIP, a Florida general partnership, who is personally known to me or and who did not) take an oath.



F. MICHAEL DIMITROFF
MY COMMISSION # CC323791 EXPIRES
October 22, 1997
BONDED THRU TROY FAIN INSURANCE, INC.

                              _____
                              NOTARY PUBLIC
                              Print Name: F. Michael Dimitroff
                              My Commission Expires:

                              F. MICHAEL DIMITROFF
                              MY COMMISSION # CC323791 EXPIRES
                              October 22, 1997
                              BONDED THRU TROY FAIN INSURANCE, INC.

OR 1855 PG 1032

# EXHIBIT A

## LEGAL DESCRIPTION

COMMENCE at an old concrete monument marking the Northwest corner of Section 27, Township 1 North, Range 1 East, Leon County, Florida, thence run North 89 degrees 50 minutes 08 seconds East 2,033.16 feet along the section line; thence North 00 degrees 03 minutes 37 seconds East 103.10 feet to the POINT OF BEGINNING. From said POINT OF BEGINNING, thence North 89 degrees 50 minutes 08 seconds East 302.80 feet; thence South 00 degrees 02 minutes 04 seconds East 206.97 feet to a point on the Northern right of way line of Mahan Drive (also known as U.S. 90 East); thence along said right of way line of Mahan Drive North 67 degrees 23 minutes 00 seconds East 216.72 feet; thence leaving said right of way line run North 00 degrees 02 minutes 04 seconds West to a point on the said Northern right of way line of Mahan Drive; thence along said right of way South 89 degrees 50 minutes 08 seconds West 124.39 feet; thence North 67 degrees 23 minutes 00 seconds East 401.40 feet; thence leaving said right of way run North 00 degrees 20 minutes 26 seconds East 447.43 feet; thence South 89 degrees 54 minutes 52 seconds East 557.93 feet; thence South 00 degrees 20 minutes 57 seconds West 286.36 feet to a point on the said Northern right of way line of Mahan Drive; thence along said right of way line North 67 degrees 23 minutes 00 seconds East 32.58 feet; thence leaving said right of way line North 00 degrees 20 minutes 57 seconds East 273.78 feet; thence South 89 degrees 54 minutes 52 seconds East 138.81 feet; thence North 00 degrees 04 minutes 13 seconds East 299.62 feet; thence West 867.96 feet; thence North 300.41 feet; thence North 89 degrees 56 minutes 30 seconds West 609.75 feet; thence South 00 degrees 03 minutes 37 seconds West 1,099.34 feet to the POINT OF BEGINNING.

Containing 23.82 acres, more of less.

OR 1855 PG 1033



POINT OF BEGINNING

POINT OF COMMENCEMENT

BEARING BASE FOR THIS SURVEY WAS ESTABLISHED BY USING A BEST FIT LINE OF THE EXISTING MONUMENTATION ALONG THE NORTHERN RIGHT OF WAY LINE OF STATE ROAD NUMBER 10 IN ACCORDANCE WITH THE STATE ROAD DEPARTMENT RIGHT OF WAY MAP 5502, SHEET 1 OF 3, DATED 1938.

**LEGAL DESCRIPTION**

COMMENCE at an old concrete monument marking the Northwest corner of Section 27, Township 1 North, Range 1 East, Leon County, Florida; thence run North 89 degrees 50 minutes 08 seconds East 2,033.16 feet along the section line; thence North 00 degrees 03 minutes 37 seconds East 103.10 feet to the POINT OF BEGINNING. From said POINT OF BEGINNING, thence North 89 degrees 50 minutes 08 seconds East 302.80 feet; thence South 00 degrees 02 minutes 04 seconds East 206.97 feet to a point on the Northern right of way line of Mahan Drive (also known as U.S. 90 East); thence along said right of way line of Mahan Drive North 67 degrees 23 minutes 00 seconds East 216.72 feet; thence leaving said right of way line run North 00 degrees 02 minutes 04 seconds West to a point on the said Northern right of way line of Mahan Drive; thence along said right of way South 89 degrees 50 minutes 08 seconds West 124.39 feet; thence North 67 degrees 23 minutes 00 seconds East 401.40 feet; thence leaving said right of way run North 00 degrees 20 minutes 26 seconds East 447.43 feet; thence South 89 degrees 54 minutes 52 seconds East 557.93 feet; thence South 00 degrees 20 minutes 57 seconds West 286.36 feet to a point on the said Northern right of way line of Mahan Drive; thence along said right of way line North 67 degrees 23 minutes 00 seconds East 32.58 feet; thence leaving said right of way line North 00 degrees 20 minutes 57 seconds East 273.76 feet; thence South 89 degrees 54 minutes 52 seconds East 138.81 feet; thence North 00 degrees 04 minutes 13 seconds East 289.62 feet; thence West 867.96 feet; thence North 300.41 feet; thence North 89 degrees 56 minutes 30 seconds West 608.75 feet; thence South 00 degrees 03 minutes 37 seconds West 1,099.34 feet to the POINT OF BEGINNING.
   Containing 23.82 acres, more or less.

**CERTIFIED TO:**
GARDNER, SHELFER, DUGGER AND BIST P.A.
TALLAHASSEE STATE BANK
FIRST AMERICAN TITLE INSURANCE COMPANY
CHATEAU LAFAYETTE PARTNERSHIP

**LEGEND**

- PCM = FOUND CONCRETE MONUMENT
- FIR = FOUND IRON ROD
- FRC = FOUND NAIL AND CAP
- FIP = FOUND IRON PIPE
- SCM = SET CONCRETE MONUMENT NUMBER 5051

THE UNDERSIGNED SURVEYOR HAS NOT BEEN PROVIDED A CURRENT TITLE OPINION OR ABSTRACT OF MATTERS AFFECTING TITLE TO THE SUBJECT PROPERTY. IT IS POSSIBLE THERE ARE DEEDS OF RECORD, UNRECORDED DEEDS, EASEMENTS, OR OTHER INSTRUMENTS WHICH COULD AFFECT THE BOUNDARIES.

I HEREBY CERTIFY THAT THIS SURVEY AND LEGAL DESCRIPTION CONFORMS TO CHAPTER 21—HH—6, F.A.C.

DAVID W. HUTCHESON   5/31/93
PROFESSIONAL LAND SURVEYOR
FLORIDA REGISTRATION NO. 5051

| SURVEY & LEGAL DESCRIPTION OF CHATEAU LAFAYETTE FOR PEPPER GHAZVINI | CAPITAL ENGINEERING CONSULTANTS, INC. |
|---|---|

| DATE: AUG 31, '93 | DWG. I.D.: GZMDSV01 |
|---|---|
| SCALE: 1" = 300' | DRAWN BY: D.H. |
| SHEET: 1 OF 1 | CHECKED BY: D.W.H. |
| JOB NO.: 93–177 | FIELD BOOK: N/A |

1720 EAST MAHAN DRIVE, TALLAHASSEE, FLORIDA   32308
POST OFFICE BOX 1394, TALLAHASSEE, FLORIDA   32302
PHONE: (904) 656-9177          FAX: (904) 656-4085



EXHIBIT B

OR 1855 PG 1034



**LEGAL DESCRIPTION**

COMMENCE at an old concrete monument marking the Northwest corner of Section 27, Township 1 North, Range 1 East, Leon County, Florida, thence run North 89 degrees 52 minutes 51 seconds East 2,033.00 feet to the POINT OF BEGINNING. From said POINT OF BEGINNING, continue North 89 degrees 52 minutes 51 seconds East 202.90 feet; thence South 00 degrees 02 minutes 00 seconds East 144.93 feet to a point on the Northern right of way line of Mahan Drive (also known as U.S. 90 East); thence along said right of way line of Mahan Drive North 67 degrees 23 minutes 00 seconds East 324.92 feet; thence leaving said right of way line run North 00 degrees 00 minutes 13 seconds East to a point on the said Northern right of way line of Mahan Drive; thence along said right of way South 89 degrees 50 minutes 36 seconds West 125.11 feet; thence North 87 degrees 23 minutes 00 seconds East 402.19 feet; thence leaving said right of way run North 00 degrees 22 minutes 37 seconds East 446.85 feet; thence South 89 degrees 55 minutes 59 seconds East 557.28 feet; thence South 00 degrees 20 minutes 03 seconds West 286.08 feet to a point on the said Northern right of way line of Mahan Drive; thence along said right of way line North 87 degrees 23 minutes 00 seconds East 32.58 feet; thence leaving said right of way line North 00 degrees 20 minutes 03 seconds East 273.52 feet; thence South 89 degrees 55 minutes 59 seconds East 139.19 feet; thence North 00 degrees 04 minutes 17 seconds East 299.62 feet; thence West 867.49 feet; thence North 300.69 feet; thence North 89 degrees 58 minutes 35 seconds West 610.21 feet; thence South 00 degrees 03 minutes 16 seconds West 1,202.10 feet to the POINT OF BEGINNING.

Containing 24.82 acres, more or less.

THE UNDERSIGNED SURVEYOR HAS NOT BEEN PROVIDED A CURRENT TITLE OPINION OR ABSTRACT OF MATTERS AFFECTING TITLE TO THE SUBJECT PROPERTY. IT IS POSSIBLE THERE ARE DEEDS OF RECORD, UNRECORDED DEEDS, EASEMENTS, OR OTHER INSTRUMENTS WHICH COULD AFFECT THE BOUNDARIES.

I HEREBY CERTIFY THAT THIS SKETCH AND LEGAL DESCRIPTION CONFORMS TO CHAPTER 21-HH-6, F.A.C.

DAVID W. HUTCHIESON
PROFESSIONAL LAND SURVEYOR
FLORIDA REGISTRATION NO. 5051

**Not A Survey**

SKETCH & LEGAL DESCRIPTION OF
CHATEAU LAFAYETTE FOR
PEPPER GHAZVINI

| | |
|---|---|
| DATE: MAY 13, '93 | DWG. I.D.: GZMDSV01 |
| SCALE: 1" = 300' | DRAWN BY: M.P. |
| SHEET: 1 of 1 | CHECKED BY: D.W.H. |
| JOB NO.: 93-177 | FIELD BOOK: N/A |

CAPITAL
ENGINEERING
CONSULTANTS, INC.

1780 EAST MAHAN DRIVE, TALLAHASSEE, FLORIDA 32308
POST OFFICE BOX 1394, TALLAHASSEE, FLORIDA 32308
PHONE: (904) 656-0177      FAX: (904) 656-4086

*EXHIBIT C*